**POTTSVILLE BROADCASTING CO. v. FEDERAL COMMUNICATIONS COMMISSION (SCHUYLKILL BROADCASTING CO., Intervener).**
**No. 7016.**

United States Court of Appeals for the District of Columbia.

Argued Jan. 10, 1939.

Decided April 3, 1939.

Rehearing Denied May 5, 1939.

---

Eliot C. Lovett and Charles D. Drayton, both of Washington, D. C., for appellant.

William J. Dempsey, Gen. Counsel, William H. Bauer, Andrew G. Haley, Hampson Gary, Gen. Counsel, George B. Porter, Asst. Gen. Counsel, Fanney Neyman, Asst. Counsel, and Frank U. Fletcher, all of Washington, D. C., for Federal Communications Commission.

Arthur W. Scharfeld, Philip G. Loucks, and Joseph F. Zias, all of Washington, D. C., for Schuylkill Broadcasting Co.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

GRONER, C. J.

Pottsville Broadcasting Company (petitioner) is a Maryland corporation. In May, 1936, it applied to the Federal Communications Commission for a construction permit to erect a radio broadcasting station in Pottsville, Pennsylvania. The application was on the prescribed form and averred that there was public need for the service and that it would not cause objectionable interference with any existing station; that the station would be built and equipped in conformity with the Commission's standards and subject to its approval; that the applicant was legally, technically, and financially qualified; and that the public interest, convenience and necessity would be served by the grant to it of the permit. On July 2, 1936, the application was referred to an examiner; hearings were begun in September; and in October the examiner reported his findings of fact, concluded that the averments of the application had been proved, and recommended the granting of the application. The Commission allowed intervention and exceptions by the Schuylkill Broadcasting Company, which had applied for the same facilities shortly after petitioner's application had been set for hearing, but whose record had not been made. In December, 1936, the Broadcast Division of the Commission set petitioner's application down for oral argument. In May, 1937, the Commission handed down its decision, denying petitioner's application. In its statement of facts and decision the Commission said there existed a need for local service in Pottsville; that the equipment proposed to be used was capable of operating in conformity with the technical rules and regulations of the Commission; but that the showing of financial ability was not satisfactory; and for that reason it was not in the public interest to grant the license. The Commission added that the principal stockholder of the applicant did not reside in Pottsville, had no definite plans for

spending a "percentage of his time" there, and had failed to show he was acquainted with the needs of the area proposed to be served and prepared to meet those needs.

From the order denying the application there was an appeal to this court. In May, 1938, we decided that the Commission was in error in holding that petitioner had not shown adequate financial responsibility, and on this ground reversed the order. 69 App.D.C. 9, 98 F.2d 288. As to the Commission's general inference, i.e., that it is desirable that those who control the policies of a local station should show themselves acquainted with the needs of the locality, we said that we knew from published reports of the Commission that it had not adopted a fixed and definite policy in that respect, nor sought to lay down a hard and fast rule; and in this view, and considering the good faith of the applicant and the conclusion of the Commission that the establishment of a station in Pottsville was desirable and in the public interest, we would without expressing any opinion of our own leave that question for reconsideration by the Commission.

When the case was remanded, petitioner asked the Commission to reconsider and grant its application. It pointed out that the Commission had never adopted a policy requiring a majority stockholder in the applicant corporation for a local station to be a resident of the area to be served. And it insisted that, since the application was not for a "local station" anyway, the question was not pertinent, and there was consequently nothing more to consider. The Commission, however, refused to accede to this position and entered an order for a new hearing on the applications of petitioner, Pottsville News and Radio Corporation (whose application had been filed seven months after the petitioner's), and Schuylkill Broadcasting Company. The Commission announced that it would hear and consider the applications "individually on a comparative basis, the application which in the judgment of the Commission will best serve public interest to be granted".

To prevent the carrying out of this order, petitioner applied to this court for a writ to prohibit the Commission from taking any steps or exercising any jurisdiction except as required by the judgment of this court and for a writ of mandamus to require the Commission to grant the application of the petitioner on the record as submitted to and considered by this court. The Commission answered and insists that neither prohibition nor mandamus may be invoked to restrain it from exercising at any time its regulatory power conferred by law, or to circumscribe its discretion.

Stated in abridged form, the positions of the parties are these:

Petitioner insists that the order of the Commission indicates a definite intention to disregard the decision and mandate of this court, to consider petitioner's application de novo, and to compel petitioner to contest its rights with new parties who were not parties to the original hearing and were never eligible to become parties under the Commission's rule,[1] and in consequence to base its new decision upon facts not properly before it.

The position of the Commission is that the order of this court was not final; that this court merely reversed the former order of the Commission and remanded the cause to it for further proceedings; and that in this aspect it is within its discretion to combine petitioner's application and other subsequently filed applications, thus placing all on a parity and reaching a conclusion on a comparative basis.

In view of what has been said, it will be obvious at once that the question we have to decide is: When this court reverses a decision of the Commission and remands the case for further proceedings, is the Commission required to reconsider the same record in the light of our opinion, or may it reopen the cause and hear it on an entirely new and different record? The Commission takes the latter view and insists that the statute, by conferring broad regulatory power and discretion in the granting of licenses, imposes upon it the power and the duty, upon remand, to re-

[1] Rule 106.4. "In fixing dates for hearings the Commission will, so far as practicable, endeavor to fix the same date for hearings on all related matters which involve the same applicant, or arise out of the same complaint or cause; and for hearings on all applications which by reason of the privileges, terms, or conditions requested present conflicting claims of the same nature, *excepting, however, applications filed after any such application has been designated for hearing*." (Italics supplied.) This has become Sec. 12.21 of the Commission's Rules of Practice and Procedure, effective January 1, 1939.

consider the application in the light of events subsequent to the making of the original record. Stated in terms of this particular case, the question is whether the Commission, having decided that the petitioner was qualified in particular respects, may now disregard petitioner's priority and the case made by it and consider its application on a comparative basis with subsequent applications on records made after the Commission's original decision.

Sec. 402 of the Act, 47 U.S.C.A. § 402, applies to appeals from decisions of the Commission, and Sec. 402(e) provides: "At the earliest convenient time the court shall hear and determine the appeal upon the record before it, and shall have power, upon such record, to enter a judgment affirming or reversing the decision of the Commission, and in event the court shall render a decision and enter an order reversing the decision of the Commission, it shall remand the case to the Commission to carry out the judgment of the court * * *. The court's judgment shall be final, subject, however, to review by the Supreme Court of the United States upon writ of certiorari * * *."

▮▮▮ We have no doubt that as far as is practicable the order of the court entered on an appeal from the Commission ought to have the same effect and be governed by the same rules as apply in appeals from a lower federal court to an appellate federal court in an equity proceeding. The rule in such cases is stated in Sanford Fork & Tool Co., Petitioner, 160 U.S. 247, 16 S. Ct. 291, 40 L.Ed. 414, restated in Re Potts, 166 U.S. 263, 17 S.Ct. 520, 41 L.Ed. 994, and confirmed in Delaware L. & W. R. Co. v. Rellstab, 276 U.S. 1, 48 S.Ct. 203, 72 L. Ed. 439. Shortly stated, the rule is that when a case has been decided on appeal and remanded to the trial court, the latter has no authority, without leave of the appellate court "to grant a new trial, a rehearing, or a review, or to permit new defenses on the merits to be introduced by amendment of the answer". Re Potts, supra, 166 U.S. at page 267, 17 S.Ct. at page 521, 41 L.Ed. 994.

"The circuit court[2] is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded. * * * But the circuit court may consider and decide any matters left open by the mandate of this court; and its decision of such matters can be reviewed by a new appeal only. * * * The opinion delivered by this court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate, and either upon an application for a writ of mandamus or upon a new appeal it is for this court to construe its own mandate, and to act accordingly." Sanford Fork & Tool Co., Petitioner, 160 U.S. 255, 256, 16 S.Ct. 293, 40 L.Ed. 414.

Applying the rule to the case here, we have a situation in which it is apparent that the applicant for a radio license duly certified itself under the rules of the Commission as in all respects qualified to receive and exercise the permit. The examiner, to whom the application was referred, found all the material facts necessary to the grant in favor of the applicant. The Commission, on the report and exceptions filed by an applicant who had subsequently filed for the same facilities and who was permitted to intervene in opposition, affirmatively found that there was need of the station and that the equipment proposed to be used was in conformity with its rules and regulations; but held that the application should be rejected because "in the present state of the record, the applicant corporation does not appear to be financially qualified to construct the proposed station"; and as a sort of supplemental justification of the rejection, stated that the president of the applicant corporation had never resided in Pottsville and had no present purpose of residing there, but failed to find that fact an adequate ground for rejection. On appeal to this court we held that the Commission was in error in holding there was lack of financial qualification. Since we were uncertain whether the Commission intended its statement "that those who will control the policies of proposed new 'local' broadcast stations should show themselves to be acquainted with the needs of the area proposed to be served and to be prepared to meet that need" to be a finding of lack of public interest, we remanded the case, with

---

[2] The Supreme Court was speaking in 1895, and this passage refers to the old federal circuit court, since abolished, and not to the circuit court of appeals.

the comment that this ground of refusal never had been brought to our attention and that we were not advised whether it was the purpose of the Commission to adopt it as a rule or policy, but that if such action were taken, it should certainly be applied with uniformity and that, since there was neither prior rule nor practice on which we could rely, we assumed the statement was secondary rather than primary. And accordingly we said that if the Commission should be of opinion that the application ought not to be granted because a stranger to Pottsville had the controlling financial interest and should adopt a rule with relation to that subject, we should feel impelled to accept the Commission's view. The case, with that question alone open, was remanded to the Commission for reconsideration.

■■■ In its opposition the Commission now says there are other questions which must be determined before it can find that the public interest will be served in granting petitioner's application. The only such matter pointed out is that the Commission had made no previous finding "as to the technical qualifications of the petitioner to operate the station, the Commission's duty under Section 303(q) of the Act, 47 U.S. C.A. § 303(q), to provide protection to air navigation was not discharged", but we find by reference to the Commission's findings that "the equipment proposed to be used by applicant is capable of operating in conformity with the technical Rules and Regulations of the Commission". This, we think, is a finding in favor of technical qualification, and we know of nothing either in the practice or rules of the Commission which requires more. The method of installation, which the Commission is required under Sec. 303(q) of the Act to regulate so as to avoid a menace to air navigation, has relation to the transmitter location, but it is hardly ingenuous to say that this is a matter as to which the Commission ordinarily makes any finding prior to the grant of a construction permit. On the contrary, it is the custom of the Commission to reserve that question and to make the grant subject to its approval of the location and the antenna system. And this would certainly seem all that is necessary to protect the public interest. The custom was recognized by petitioner in this case, and its original application was made subject to the Commission's subsequent approval of the site. In view of this, it seems to us to be going too far to say that this reserved right of approval will justify the Commission in reopening the record for the introduction of new and different facts having no relation to that question. In saying this much, we do not wish to be understood as implying that the Commission may not, upon a showing of newly discovered evidence or upon a showing of supervening facts which go to the very right of the applicant to have a license, remake the record in those respects without the necessity of a bill of review or other like technical methods of bringing into the record new and previously undiscovered facts, but there should be some control of the exercise of this right, and we think control is of necessity lodged in this court. But we think it is obvious that the particular objections of the Commission to a reconsideration on the record—to which we have referred—are mere makeweights, and that the real bone of contention is the insistence by the Commission upon absolute authority to decide the rights of applicants for permits without regard to previous findings or decisions made by it or by this court.

■■■ While it is true the authority to grant is exclusive in the Commission, and while it is also true, as we have said before, that the license conferred on the owner of a radio broadcasting station is permissive only and within the power of the Commission by congressional delegation, we cannot consent to the view that either the right to grant or the right to revoke is subject to the uncontrolled discretion of that tribunal. In granting licenses, the Commission is required to act "as public convenience, interest or necessity requires". This criterion is not to be interpreted as setting up a standard so indefinite as to confer unlimited power. Federal Radio Commission v. Nelson Bros. Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406. When an applicant for a station who is qualified as to citizenship and otherwise has submitted his cause to the Commission and the Commission in denying the application has filed, as the Act requires and as we have time and again insisted should be done, "a full statement in writing of the facts and grounds for its decision" and an appeal as authorized by law is taken to this court, and the decision of the Commission reversed and the cause

 

remanded for proceedings in accordance with our opinion and order, it is the duty of the Commission to comply with that order and, unless for some exceptional reason it obtains leave of this court to reopen the case, to reconsider the matter on the record and in the light of this court's opinion.

Here, as we have pointed out, petitioner was first in the field. Its application was duly set down for hearing and was duly heard by the Commission on the record made. This was in accordance with the Commission's Rule 106.4,[3] which recognizes priority of filing when subsequent applications are made after the prior one has been set for hearing. In such a case petitioner ought not now to be put in any worse position than it occupied on the original hearing, and therefore ought not to be required any more now than originally to be put in hodgepodge with later applicants whose records were not made at the time of the previous hearing. On this state of facts, we are of opinion the Commission should rehear the application on the record and in the light of our opinion. We believe that this expression of our views on the subject will obviate the necessity of issuing the writ. If it becomes necessary for the protection of petitioner's rights, counsel may submit a proposed form of order within 30 days. Otherwise an order will be entered denying the petition for prohibition and mandamus.

Judgment suspended for 30 days.

On Petitions for Rehearing.

PER CURIAM.

After due consideration, the court is of the view that it should adhere to the opinion announced in this case April 3, 1939. For that reason, the petition of Federal Communications Commission for rehearing is denied.

First. The court has carefully examined the decision of the Supreme Court in Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 59 S.Ct. 301, 83 L.Ed. 221, and can find nothing there in conflict with the opinion in this case.

Second. The petition for rehearing of Schuylkill Broadcasting Company, intervener, in the same case, is also denied. The opinion of this court expressly held that the

reconsideration by the Commission should be on the record originally considered. Whatever rights Schuylkill then, as intervener, was entitled to assert, it is entitled to assert now. No more was said in the opinion than that Schuylkill's own record on its application, which was made subsequent to the hearing by the Commission on the Pottsville Company's application, could no more be considered now than under the Commission's rule at the time of the Commission's original hearing on Pottsville's application.

The Commission having intimated a desire to apply to the Supreme Court, the writ of mandamus will issue as prayed but will be stayed for thirty days from this date.

---

[3] Now Sec. 12.21 of the Commission's Rules of Practice and Procedure.

105 F.2d—3½