James P. MITCHELL, Secretary of
Labor, Appellant,

v.

RIEGEL TEXTILE, Inc., et al., Appellees.

No. 14404.

United States Court of Appeals
District of Columbia Circuit.

Argued June 4, 1958.

Decided Oct. 2, 1958.

Mr. Arthur H. Fribourg, Atty., Dept. of Justice, with whom Asst. Atty. Gen. George C. Doub and Samuel D. Slade, Atty., Dept. of Justice, were on the brief, for appellant.

Mr. Llewellyn C. Thomas, Washington, D. C., for appellees. Mr. Richard H. Mayfield, Washington, D. C., also entered an appearance for appellees.

Before EDGERTON, Chief Judge, and WASHINGTON and DANAHER, Circuit Judges.

EDGERTON, Chief Judge.

A large number of textile mills asked the District Court, in 1953, to set aside and enjoin as illegal a minimum wage determination of the Secretary of Labor under the Walsh-Healey Act, 41 U.S.C. A. §§ 35–45.[1] The District Court stayed the determination as to the plaintiffs and temporarily enjoined the Secretary from enforcing it against them. At the same time the court ordered that any plaintiff who entered into a contract otherwise

[1]. The original plaintiffs included two of the present appellees. The four other appellees were among the many plaintiffs who joined later.

covered by the determination should post a bond to make good underpayments of wages, up to the amount of the bond, in case the Secretary's minimum wage determination were ultimately upheld. The court's order also provided that the "undertaking contained in said bond shall be without prejudice to such other liability, if any, as may exist on the part of such plaintiff for unpaid wages in the event it is finally decided that this stay and preliminary injunction should not have been granted."

It has been finally decided that the stay and preliminary injunction should not have been granted. The Secretary's minimum wage determination was upheld on appeal. Mitchell v. Covington Mills, 97 U.S.App.D.C. 165, 229 F.2d 506, certiorari denied 350 U.S. 1002, 76 S.Ct. 546, 100 L.Ed. 865, rehearing denied 351 U.S. 934, 76 S.Ct. 787, 100 L. Ed. 1462; Alabama Mills, Inc., v. Mitchell, 100 U.S.App.D.C. 257, 244 F.2d 21, certiorari denied 355 U.S. 834, 78 S.Ct. 53, 2 L.Ed.2d 45. The Secretary afterwards moved in the District Court for an order requiring the plaintiffs to make good their underpayments of wages, with interest, and enforcing the liability of the sureties on the bonds. The parties agreed on the amounts of the underpayments.

■ The District Court held that not only the liability of the sureties, but the liability of the plaintiffs themselves, was limited to the amount of the bonds that had been posted.[2] The court was clearly right as to the sureties, but we think it erred as to the plaintiffs themselves. In our opinion they are liable for the entire amount of their underpayments, i. e., for the difference between the wages they paid while the injunction against the Secretary was in effect and the minimum wage of $1.00 an hour which he had fixed. This difference was the amount the plaintiffs saved, and the employees lost, by reason of the erroneous injunction. It was therefore the amount by which the plaintiffs were unjustly enriched at the employees' expense. Since separate suits by each employee would be unreasonably burdensome to the parties and the courts, the Secretary may recover as the representative of all employees.

In Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co. a railroad which, because of an erroneous injunction, collected higher rates than those lawfully fixed by public authority, was required to refund the excess. The Court applied the "principle, long established and of general application, that a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby. This right, so well founded in equity, has been recognized in the practice of the courts of common law from an early period." 249 U.S. 134, 145, 39 S.Ct. 237, 242, 63 L.Ed. 517. Ex parte Lincoln Gas & Electric Light Co., 256 U.S. 512, 41 S.Ct. 558, 65 L.Ed. 1066. It is immaterial whether the erroneous decree has enabled its beneficiary to collect too much, as in those cases, or to pay too little, as in this case. In Baltimore & O. R. Co. v. United States, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954, railroads that should have borne a certain expense were required to reimburse other roads which, because of an erroneous administrative ruling, had borne it instead. In Public Service Comm. of State of Missouri v. Brashear Freight Lines, 312 U.S. 621, 61 S.Ct. 784, 85 L.Ed. 1083, the Court allowed recovery, on motion in the equity suit, of license fees that a state had been erroneously enjoined from collecting.[3] It is immaterial that the tradi-

2. Forty-five of the 56 plaintiffs paid or agreed to pay the entire amount of their underpayments with interest. As to five of the other plaintiffs whose underpayments were less than their bonds, the court referred to a Special Master the question of interest. There has been no final order as to those five. The underpayments of the remaining six plaintiffs, the present appellees, exceeded their bonds.

3. Although the appellees seek to distinguish the case, they concede in their brief that "On remand the District Judge

tional word "restitution" is not clearly applicable to these cases in which unjust enrichment has resulted from paying too little and not from collecting too much. Equitable principles are not confined by rigid formulas.

■ As soon as the underpayments were made, unjust enrichment was complete. Interest should therefore be allowed from the dates of the underpayments. Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co., supra, 249 U.S. at page 147, 39 S.Ct. at page 242; Baltimore & O. R. Co. v. United States, supra, 279 U.S. at page 786, 49 S.Ct. at page 493.

Appellees Pacolet Manufacturing Corporation and Union Bleachery have not been parties since 1954. As to them the appeal is dismissed.

Reversed.

---

assessed damages in excess of the bonds, and construed the Supreme Court opinion as allowing him to enforce the orig-

inal liability for the license taxes, independently of the bonds. 41 F.Supp. 952." Brief, p. 15.